### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| **In re: PRATIK ASHOK GANDHI**<br><br>*Debtor.* | Case No. 25-33416 (JPN)<br><br>(Chapter 7) |

### DEBTOR'S MOTION TO ENFORCE THE AUTOMATIC STAY AND FOR SANCTIONS FOR VIOLATING THE AUTOMATIC STAY

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THIS MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 31, 2026 AT 1:30 P.M. (CST) BEFORE JUDGE JEFFREY P. NORMAN IN COURTROOM 403, UNITED STATES COURTHOUSE, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**TO THE HON. JEFFREY P. NORMAN, UNITED STATES BANKRUPTCY JUDGE:**

COMES NOW, Pratik Ashtok Gandhi (the "Debtor"), by and through the undersigned counsel, and respectfully moves this Court, pursuant to 11 U.S.C. § 362(a) and the Court's inherent authority, to enforce the automatic stay against creditors Arsheen Memon, Madhusudhan Bitra, and Sreenivas Gundu. In support, the Debtor respectfully represents:

## A.  ENFORCEMENT OF THE AUTOMATIC STAY

1.     On June 16, 2025, the Debtor filed a voluntary chapter 7 petition.

2.     In his pre-petition business, the Debtor guaranteed substantial investments into numerous real estate development and reclamation projects. The projects encountered intermittent success, however catastrophic failures resulted in substantial losses to creditors. Since the Debtor personally guaranteed those investments, the losses triggered the Debtor's guarantees in roughly the amount of $140,000,000.

3.     On November 20, 2024, creditor Arsheen Memon ("Memon") brought a state court action against the Debtor, his entity, NVSTORS, LLC ("NVSTORS") and a former business associate, Paul Nguyen, seeking relief for claims for breach of contract, fraud, negligent misrepresentation, conspiracy, alter ego, unjust enrichment and violations of the Texas Uniform Fraudulent Transfer Act.[1]

4.     On April 30, 2025, creditors Madhusudhan Bitra ("Bitra") and Sreenivas Gundu ("Gundu") filed a verified original petition in intervention in the State Court Action seeking relief against the Debtor under the exact same claims  alleged by Memon.

5.     On July 1, 2025, the Debtor filed his Notice of Suggestion of Bankruptcy and Automatic Stay in the State Court Action.

---

[1]     *See*, Cause No. 2024-81918; *Arsheen Memon v. Pratik Gandhi et al.*; in the 133rd District Court of Harris County, Texas (the "State Court Action").

6.      On July 30, 2025, just days after Debtor's filing of Notice of Suggestion of Bankruptcy and Automatic Stay in the State Court Action, Shamim Memom (creditor Arsheen Memom's mother and admitted 'counselor and representative') sent a text message to Debtor soliciting an *ex parte* meeting with the Debtor and Debtor's wife, Natasha Gandhi for the express purpose of "get[ting] this resolved" and "put[ting] this matter past me [and Plaintiff] Arsheen,". When the Debtor protested Memon's efforts to "drag[ ] my wife into litigation," Shamim Memon responded that "the *only* reason *we* involved your family was to *keep you accountable*" (Exhibit A, emphasis added). Shamim Memom went on to threaten that "if you both [the Debtor and Natash] do not meet with *us* [then] we will have no other choice except to involve *both sets of your parents and siblings.*"[2]

7.      As an initial matter, **this post-petition communication constituted an extra-procedural collection effort which violated the automatic stay**. Moreover, the clear intent behind Shamim Memom's statements was born out a mere twenty days later. On August 20, 2025, Memon, Bitra, and Gundu (collectively "the Creditors") filed amended petitions in the State Court Action naming the Debtor's wife and father, Natasha Gandhi and Ashok Gandhi, as additional defendants.[3]

8.      Specifically, per their amended pleadings in the State Court Action, Creditors, Memon, Bitra, and Gundu alleged that Debtor had fraudulently transferred assets to Natasha and Ashok Gandhi, and sought recovery of the Debtor's pre-petition "property" allegedly fraudulently transferred to his wife and father. Further to these efforts, and also in a transparent attempt to harass Natasha and Ashok Gandhi, Creditors propounded extensive discovery, including

---

[2] *Exhibit A*.

[3] *Exhibit B*, First Amended Verified Original Petition and First Amended Verified Petition in Intervention

depositions and document production. However, because the claims against Natasha and Ashok Gandhi actually sought the recovery of property belonging to the Debtor's bankruptcy estate, Creditors' effort was challenged as violative of the automatic stay's preclusion of Creditors' efforts to seek, through derivative claims against the Debtor in state court, the recovery of property belonging to the bankruptcy estate.

9.     At the February 9, 2026 hearing in the State Court Action on the Creditors' discovery efforts, Debtor's counsel argued that the automatic stay precluded the Creditors' efforts to recover property belonging to the bankruptcy estate in the State Court Action.

10.     Specifically, the Fifth Circuit in *In re S.I. Acquisition*[4] noted as follows:

> "There are cases under [Sec.] 362(a)(1) where a bankruptcy court may properly stay the proceedings against non-bankrupt codefendants" but in order for relief for such non-bankrupt defendants to be available under [Sec. 362](a)(1), there must be "unusual circumstances" and certainly "something more than the mere fact that one of the parties in the lawsuit has filed Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties." This "unusual situation," it would seem arises when there is such identity between the debtor and the third-party defendant that <u>the debtor may be said to be the real party defendant</u> and that <u>a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.</u>

The *S.I. Acquisition* Court (citing the holding in *A.H. Robins*) further noted that "when the liability of the nonbankrupt is not independent of the debtor's liability and a judgment against the nonbankrupt will be binding upon the debtor's estate, the stay protection must be extended to encompass actions against the nonbankrupt defendants."[5]

11.     In the State Court Action, the Creditors allege that the Debtor and co-defendants Nguyen and NVSTORS all are "alter-egos" of one another, further alleging that "Defendants

[4]     817 F.2d 1142, 1147-48 (5th Cir. 1987) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d. 994, 999 (4th Cir. 1986)) (emphasis added).

[5]     *S.I. Acquisition,* 817 F.2d at 1148 (citing *A.H. Robins*, 788 F.2d at 999; *Metal Center*, 31 Bankr. at 462).

engaged in the unlawful transfer of properties and financial assets between one another, Natasha [Gandhi], and Ashok [Gandhi]" and therefore Creditors "seek[ ] to hold all of the Defendants *jointly and severally liable* for the causes of action and damages outlined;"[6] The Creditors further allege that Nguyen, Natasha, Ashok, and/or the Debtor should be held jointly and severally liable to Plaintiff on the grounds that the NVSTORS corporate entity was used to facilitate and perpetrate the alleged fraudulent transfers and other causes of action against Plaintiff and Intervenors for the personal benefit of Nguyen, Natasha, Ashok, and/or – most importantly – the Debtor.[7]

12.    On February 18, 2026, after the hearing and the Debtors' counsel's arguments regarding the application of automatic stay (and eight months after the application of the automatic stay), the Creditors finally sought and obtained an Order from the state court severing the Debtor from the State Court Action. However, Creditors continue to seek relief against the Debtor's wholly-owned entity, NVSTORS and the Debtor's wife and father, alleging the Debtor fraudulently conveyed NVSTORS' cash and assets to defraud the Debtor's and NVSTORS' creditors, including the Creditors herein.

13.    In truth of fact, due to Creditors' alter-ego claims against NVSTORS (and Nguyen), any liability imposed against the nonbankrupt defendants herein (Nguyen, NVSTORS, Ashok, or Natasha) necessarily would be interrelated to and would arguably constitute a finding of liability imposed against the Debtor, against whom all state court action should be stayed pursuant to § 362(a).

14.    In the context of a wholly-owned and controlled subsidiary, as in the case of NVSTORS and Debtor herein, the debtor's bankruptcy estate generally includes the debtor's

---

[6]    Pltf's First Am. Pet. at ¶ 37; Sec. Am. Ver. Pet. in Intervention at ¶ 47 (emphasis added).

[7]    Pltf's First Am. Pet. at ¶ 41; Sec. Am. Ver. Pet. in Intervention at ¶ 51.

equity interest in the subsidiary (but not the subsidiary's assets, as the subsidiary is a separate legal entity under state corporate law).[8]  However, if the subsidiary's assets are effectively controlled by the debtor, as suggested by the concept of "de facto ownership," those assets may be treated as property of the debtor's estate.

15.      This principle was applied in *De La Pena Stettner v. Smith* (*In re IFS Fin. Corp.*), 669 F.3d 255 (5th Cir. 2012);  noting that "Texas law broadly defines the property of a debtor to be anything that may be subject to the debtor's ownership."[9]  The court found that bank accounts belonging to other entities but which were controlled by the debtor were part of the estate due to the debtor's "de facto ownership" of the entities.[10] The Court reasoned that 11 U.S.C. § 550 provides that the trustee may recover, for the benefit of the estate, property transferred fraudulently. Property of the debtor under § 550 necessarily includes that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.[11]

16.      Additionally, fraudulent transfer claims involving a debtor's company's assets may be pursued by the trustee if the transfers were made with the requisite intent under 11 USCS § 548 or applicable state law. Section 548 allows the trustee to avoid transfers made within two years before the bankruptcy filing if the debtor acted with actual intent to hinder, delay, or defraud

---

[8]     *Searcy v. Knight* (In re Am. Int'l Refinery), 402 B.R. 728 (2008); *e* (In re IFS Fin. Corp.), 669 F.3d 255 (2012).

[9]     *De La Pena Stettner v. Smith* (*In re IFS Fin. Corp.*), 669 F.3d 255, 262 (5th Cir 2012) (quoting Tex. Bus. & Comm. Code § 24.002(2), (10)).

[10]    *Smith*, 669 F.3d at 262 . ("The scant case law within our grasp shows that in answering this question on appeal, **control is more decisive than ownership**. Guided by these principles, we hold that control may be sufficient to show ownership in what is ultimately a fact-based inquiry that will vary according to the peculiar circumstances of each case.") (emphasis added).

[11]    *Smith*, 669 F.3d at 261.

creditors, or if the transfer was for less than reasonably equivalent value while the debtor was insolvent. This is exactly what is plead by the Creditors in the state court action.

17.     Moreover, the Fifth Circuit has held consistently that such claims are property of the estate and must be pursued by the trustee, not individual creditors, to ensure equitable distribution among all creditors.[12] To be clear, the Creditors allege that the Debtor used NVSTORS to make fraudulent transfers, not that NVSTORS has assets that were fraudulently transferred to defraud Creditors.

18.     Additionally, under Texas law, an alter ego-claim rests upon an identity theory. The corporation and the person or persons alleged to be acting as alter egos are considered to be a single entity.[13] Specifically, alter ego is one method of piercing the corporate veil and allowing a party to disregard the corporate veil and seek recovery for its damages from the party beneath the veil.[14]  The Creditors' amended pleading which was filed after the severance of the Debtor seeks to regard NVSTORS and Nguyen as alter-egos of one another. However, at all relevant times relating to alleged fraudulent transfers (since 2024), only the Debtor owned and controlled NVSTORS and any liability imposed on NVSTORS would implicate and potentially encumber the debtor's ownership interest in its wholly owned company, which are assets of the bankruptcy estate. Accordingly, the automatic stay must apply to the claims against all state court defendants.

19.     Further, Bankruptcy Courts considering whether property or assets have been fraudulently transferred have determined that any property of the bankruptcy debtor that is

---

[12]   *Carlton v. Baww, Inc.*, 751 F.2d 781, 785 (5th Cir.1985), *In re Sherk*, 918 F.2d 1170, 1176 (5th Cir. 1990).

[13]   *S.I. Acquisition*, 817 F.2d at 1152 (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)).

[14]   *Castleberry,* 721 S.W.2d at 272; *also Schimmelpennick v. Byrne (In re Schimmelpennick*), 183 F.3d 347 (5th Cir. 1999) (alter ego claim that "belongs to" the debtor imposes stay on alter ego claim against non-bankrupt affiliate); *Valdes v. Leisure Res. Grp, Inc.*, 810 F.2d 1345, 1352-54 (5th Cir. 1987) (applying Texas alter ego law).

transferred fraudulently may be reclaimed as property of the bankruptcy estate.[15] Since the

Fraudulent Transfer Act allows a claimant to avoid the transfer of property that is fraudulently

transferred, and permits a creditor who has obtained a judgment on a claim against a debtor to levy

execution on the transferred asset,[16] it follows that any assets which are shown to be fraudulently

transferred are, in fact, assets of the debtor and are subject to levy to satisfy a judgment. Since

Creditors' claims against Natasha and Ashok include claims that they are the fraudulent recipient

of assets actually belonging to NVSTORS, which the Creditors' prior pleadings make clear they

contend is the alter ego of the Debtor and the Debtor solely owned and control NVSTORS, the

bankruptcy stay must extend to these claims to ensure that such assets are adequately protected for

the bankruptcy creditors.[17] The Creditors' clever pleading to subvert the automatic stay should not

be rewarded to the detriment of the estate and other creditors. Simply, to prevail on their fraudulent

transfer claims, the Creditors must prove the Debtor, exercising his control over Nvstors,

fraudulently conveyed assets or property to defraud, as they plead…their creditors, including the

Creditors herein.

20.     Notably, all proceedings against Natasha Gandhi and Ashok Gandhi are void

because they were initiated *after* the Debtor filed his petition in bankruptcy.

21.     More concerning, the Creditors knew of the bankruptcy proceeding and the

automatic stay provision because their counsel made an appearance in the bankruptcy proceedings

---

[15]   *Williams v. Farris (In re Williams)*, Case No. 19-32784, 2021 Bank. LEXIS 924, * 46 – 50 (Bank.S.D. Tex. Apr. 6, 2021).

[16]   TEX. BUS. & COMM. CODE § 24.008.

[17]   *Carlton*, 751 F.2d at 785  (property that the bankruptcy debtor has fraudulently conveyed remains "property of the [bankruptcy] estate," under 11 U.S.C. § 541(a)(1). The automatic stay under Section 362(a) therefore applies and prevents a claimant from pursuing a claim under the Texas Fraudulent Transfers Act after the transferor has filed a petition for bankruptcy.) (*citing In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983)).

and argued in the State Court Action in their own pleading that the stay should apply whilst the Debtor was a party.[18]

22.     Notwithstanding, this knowledge and argument the Creditors continued to pursue relief (contradicting itself), including derivative claims, against Debtor's pre-petition property belonging to the estate by litigating claims against non-debtor-third parties for 8 months until recently obtaining severance in the state court proceedings. However, that severance does not cure their attempt to circumvent the automatic stay by seeking the same claims against the Debtor's wholly owned LLC and the admittedly, vindictive litigation against the Debtor's wife and father.

**IT IS A VIOLATION OF THE AUTOMATIC STAY TO PURSUE A FRAUDULENT TRANSFER ACT CLAIM AGAINST THE DEBTOR'S ASSETS POST-PETITION**

23.     The automatic stay provision of the Bankruptcy Code "operates as a[n] [automatic] stay applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate."[19]

24.     The automatic stay imposed by 11 U.S.C § 362(a)(3) was designed 'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor."[20] Here, Creditors seek to obtain possession of property of the estate to the exclusion and at the expense of the Debtor's other creditors.

---

[18]     See Dkt# 23 and Exhibit C-Plaintiff Response in Opposition to Defendant Nguyen's Motion to Expunge Lis Pendens (arguing Defendant Nguyen's motion and all proceedings should be stayed)

[19]     *In re MortgageAmerica Corp.*, 714 F.2d at 1273.

[20]     *Borman v. Raymark Indus, Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (*quoting Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 244, 248 (3d Cir. 1982)).

25.        "The commencement of a case under section . . . 303 of [the Code] creates an estate

... comprised ... all legal or equitable interests of the debtor in property as of the commencement of

the case." *Id*, *quoting* 11 U.S.C. § 541(a)(1).  The question that arises is property that is subject to

FTA litigation pre-petition, property in which a debtor has a legal or equitable interest to be

includible in the bankruptcy estate. The Fifth Circuit, holding that section 362(a) prevents a creditor

from "continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a

petition for bankruptcy has been filed,"  reasoned as follows:

> An action under the Fraudulent Transfers Act is essentially one for property that properly belongs  to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors. [...] The transferee may have colorable title to the property, but the equitable interest – at least as far as the creditors (but not the debtor) are concerned – is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it.  We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a "legal or equitable interest" in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.[21]

26.        The *MortgageAmerica* Court went on as follows:

> The Supreme Court has, in fact, expressly noted that section"541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code,' which would include property made available through section 544. Actions for the recovery of the debtor's property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and are therefore appropriately stayed under section 362(a)(3).[22]

---

[21]    *In re MortgageAmerica Corp.,* 714 F.2d at 1275 (citing 4A *Collier on Bankruptcy*, para. 70.14[1], at 130-131 (14th ed. 1978)).

[22]    *In re MortgageAmerica Corp.,* 714 F.2d at 1275-76 (quoting *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309 (1983)).

27.     Applying the Fifth Circuit's reasoning to the instant case would make any property transferred by the Debtor (by and through his wholly-owned and controlled entity, NVSTORS, to any third-party pre-petition under allegedly fraudulent conditions) property of the bankruptcy estate, as the Debtor still has a legal or equitable interest in the property which may be pursued by the Trustee…especially considering, as plead by the Creditors, that NVSTORS is the Debtor's "de facto ownership," those assets may be treated as property of the debtor's estate under Texas law.

28.     The Bankruptcy Code provides in 11 U.S.C. § 544(b)(1) in relevant part:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

29.      "The 'strong arm' provision of the current Code, 11 U.S.C. § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors[.]"[23]

30.     This rationale is applied in other Circuits as well. Notably, the Seventh Circuit has held that bankruptcy courts can stay actions beyond claims against the debtor to include "suits to which the debtor need not be a party but which may affect the amount of property in the bankruptcy estate."[24]  Likewise, the Second Circuit has held that the "automatic stay can apply to non-debtors … when a claim against the non-debtor  will have an immediate adverse economic consequence for the debtor's estate"[25] and calling for "enjoining state-law claims against non-debtor co-

---

[23]     *Id* at 1275. *See also Marshall v. Picard* (*In re Bernard L. Madoff Inv. Sec. LLC*), 740 F.3d 81 (2d Cir. 2014).

[24]     *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994)),

[25]     *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003),

conspirators" when the creditors' "purported tort claims are, in essence, disguised fraudulent transfer actions, which belong <u>exclusively</u> to the Trustee."[26]

31.     Again, the Fifth Circuit explained its holding on the extension of the automatic stay to Fraudulent Transfer Act claims in *S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987),. stating:

> In summary, we distill three guiding principles from our decision in <u>In re MortgageAmer</u>ica:
>
> (1) a section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor only;
>
> (2) a section 362(a)(3) stay applies to a cause of action that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor; and
>
> (3) in applying the above rules we do so by keeping in mind the Bankruptcy Code's general policies of securing and preserving the debtor's property and ensuring equal distribution of the debtor's assets to similarly situated creditors.

*Id.* at 1150.

32.     In the case *sub judice*, the Creditors are unsecured creditors holding allowable claims, but are making state-law claims for the recovery of property that was filed pre-petition in which it is seeking to void the transfer of property.  The seminal issue is whether the property the Creditors seek to recover from the Debtor's wife and father belong to NVSTORS or the Debtor. The Creditors previously plead and continue to maintain that NVSTORS is the alter ego of another person, has no assets or property, and belongs to either Nguyen or the Debtor. The Creditors' problem is that Nguyen was not an owner of NVSTORS at the time that any alleged fraudulent transfer occurred. Resultantly, only the Debtor could be the real alter ego of NVSTORS for purposes of the fraudulent transfer claims asserted against Natasha and Ashok Ghandi (thus exposing the derivative nature of the Creditors' state court proceedings).  Therefore, the Trustee

---

[26]    *In re Bernard L. Madoff Inv. Sec. LLC*, 740 F.3d 81, 94 (2d Cir. 2014) (emphasis added).

has the right pursuant to 11 U.S.C. § 544(b)(1) to "step into the shoes" of the Creditors on the fraudulent transfer act claim against the Debtor.

33. Resultantly, the right to pursue the fraudulent transfer actions belongs exclusively to the Trustee. *Supra*. Therefore, the Creditors' continued pursuit of the state court litigation to obtain possession of property of the estate must be stayed by Section 362(a)(3).

34. For these reasons, the Debtor respectfully asks the Court to enforce the automatic stay against the Creditors and impose an appropriate sanction for knowingly and intentionally violating the automatic stay, including but not limited to the award of attorneys' fees incurred in bringing this Motion and in defending the state court action since the imposition of the automatic stay.

Dated:  March 5, 2026
　　　　　Houston, Texas

Respectfully submitted,

/s/ *Marcellous S. McZeal*
Marcellous S. McZeal
**GREALISH McZEAL, PC**
S.D. Tex. Admission No.: 21271
SBOT#: 00798368
700 Louisiana Street, 41st Floor
Houston, Texas 77002
Telephone: (713) 255-3234
Facsimile: (713) 783-2502
Email:  mmczeal@grealishmczeal.com

***Counsel for the Debtor***

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by electronic means via ECF transmission to all Pacer System participants in these bankruptcy cases, at the time of filing on March 5, 2026.

/s/ *Marcellous S. McZeal*
Marcellous S. McZeal