8/20/2025 10:19 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 104603198
By: Ashley Lopez
Filed: 8/20/2025 10:19 AM

**Cause No. 2024-81918**

| | | |
|---|---|---|
| ARSHEEN MEMON | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | 133rd JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| | § | |
| PRATIK GANDHI, NVSTORS LLC, | § | HARRIS COUNTY, TEXAS |
| PAUL NGUYEN, NATASHA ANIMESH | § | |
| SOLANKI GANDHI, and ASHOK | § | |
| GANDHI | § | |
| | § | |
| *Defendants.* | § | |



**SECOND AMENDED VERIFIED ORIGINAL PETITION IN INTERVENTION**

TO THE HONORABLE JUDGE OF SAID COURT:

**COME NOW**, Intervenors, Madhusudhan Bitra ("Bitra") and Sreenivas Gundu ("Gundu") (collectively, "Intervenors") and file this their Second Amended Verified Original Petition in Intervention against Defendants[1], Pratik Gandhi, NVSTORS, LLC, Paul Nguyen, Natasha Animesh Solanki Gandhi, and Ashok Gandhi (collectively, "Defendants"), and in support thereof will respectfully show this Court they have a justiciable interest in the suit and as follows:

**I. DISCOVERY LEVEL**

---

[1] On July 1, 2025, Pratik Gandhi filed a Notice of Suggestion of Pendency of Bankruptcy in this Court after filing a voluntary Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, staying these proceeding against him. On August 4, 2025, Pratik Gandhi filed a Motion to Dismiss his Chapter 7 Voluntary Bankruptcy Case which is set to be heard on September 16, 2025. At this time, Intervenors files this Second Amended Petition against all remaining Defendants until the United States Bankruptcy Court for the Southern District of Texas issues an order addressing Debtor Pratik Gandhi's pending Motion to Dismiss.

1

1.      Discovery in this case is intended to be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

## II. CLAIM FOR RELIEF

2.      Intervenors seek monetary relief of more than $100,000.00 but less than $5,000,000.00 pursuant to Rule 47(c) of the Texas Rules of Civil Procedure. Intervenors seek actual damages, penalties, pre-judgment interest, costs, expenses, and attorneys' fees, as well as non-monetary relief. Intervenors reserve the right to amend their claims for monetary relief.

## III.  PARTIES

3.      The Intervenors, who all have a justiciable interest in this suit, are Madhusudhan Bitra and Sreenivas Gundu residing in Dallas County, Texas.

4.      Defendant NVSTORS LLC ("NVSTORS") is a limited liability company registered in Texas and conducting business in Harris County, Texas. NVSTORS and has already appeared in this case.

5.      Defendant Pratik Gandhi ("Gandhi") is a resident of Galveston County, Texas and the owner and registered agent of NVSTORS. Gandhi and has already appeared in this case.

6.      Defendant Paul Nguyen ("Nguyen") is a resident of Galveston County, Texas and a director, officer, member, manager, or person in control of NVSTORS. Nguyen and has already appeared in this case.

7.      Defendant Natasha Animesh Solanki Gandhi ("Natasha") is a resident of Galveston County, Texas and may be served at 917 Sunset Dr. Friendswood, TX 77546; or wherever she may be found.

8.  Defendant Ashok Gandhi ("Ashok") is a resident of Harris County, Texas and may be served at 18911 Dove Creek Springs Trail Cypress, TX. 77433; or wherever he may be found.

Unofficial Copy Office of Marilyn Burgess District Clerk

#### IV.  JURISDICTION & VENUE

9.      This Court has personal jurisdiction over all parties as all parties reside and conduct business in Texas. The damages and relief sought are within the jurisdictional limits of this Court.

10.      Venue is proper in Harris County, Texas pursuant to Texas Civil Practice & Remedies Code section 15.002. Specifically, venue is proper in this county under the general venue rule because all or a substantial part of the events or omissions occurred in Harris County, Texas.

#### V.  BACKGROUND FACTS

*i. Intervenors are Just Some of a Large Number of Investors Victimized by Defendants*

11.      Upon information and belief, in or around the year of 2022, Defendants NVSTORS and Gandhi began soliciting investors to invest large amounts of short-term financial investments linked to various real estate projects with a guarantee of even larger returns for investors. *See* Exhibit F, Houston Chronicle Article Dated July 31, 2025; *Houston-Area Residents allege multimillion-dollar real estate scam. Court Findings reveal the details*.

12.      However, the unsuspecting investors later learned that they would receive no returns on their investments and Defendants would unlawfully retain and refuse to return their investment sum(s) in violation of a number of Financing Agreements.

13.      Like the Plaintiff in this lawsuit, Intervenors were two such unsuspecting investors who invested hard-earned savings with NVSTORS, Nguyen, and Gandhi only to be left with zero dollars in return.

*ii. Investment Agreements Between Bitra and Defendants*

14.      On or about July 14, 2023 Bitra and Gandhi executed a written Financing Agreement ("Bitra's First Agreement") wherein NVSTORS was to repay Bitra a principal in the amount of two-hundred and sixty-seven thousand dollars ($267,000.00), in addition to all accrued

3

interest at the rate of thirty-six (36) percent fixed for a period of six (6) months, upon the investment's maturity date of January 5, 2024 ("Madhu's First Maturity Date"). *See* Exhibit A, a true and correct copy of Bitra's First Agreement.

15. Upon information and belief, at the time of the execution of Bitra's First Agreement, Nguyen was a business partner of Gandhi's and engaged in joint management of NVSTORS' business operations. Nguyen is also a signatory to Bitra's First Agreement. *Ex. A at 4.*

16. Defendants NVSTORS, Nguyen, and Gandhi represented to Madhu pursuant to Bitra's First Agreement's terms, that "investors are guaranteed to be paid out" upon the investment's First maturity Date. *Ex. A at 3.* Bitra has made several demands for payment pursuant to the terms of Bitra's First Agreement after the arrival of Bitra's First Maturity Date, but to date Defendants have failed to remit payment in violation of Bitra's First Agreement's terms.

17. On or about October 11, 2023 Bitra and Gandhi executed a second written Financing Agreement ("Bitra's Second Agreement") wherein NVSTORS was to repay Bitra a principal in the amount of two-hundred and fifty thousand dollars ($250,000.00), in addition to all accrued interest at the rate of twenty-seven (27) percent fixed for a period of four (4) months, upon the investment's maturity date of February 1, 2024 ("Bitra's Second Maturity Date"). *See* Exhibit B, a true and correct copy of Bitra's Second Agreement.

18. Upon information and belief, at the time of the execution of Bitra's Second Agreement, Nguyen was a business partner of Gandhi's and engaged in joint management of NVSTORS' business operations. Nguyen is also a signatory to Bitra's Second Agreement. *Ex. B at 3-4.*

19. Defendants NVSTORS, Nguyen, and Gandhi represented to Bitra pursuant to

4

Bitra's Second Agreement's terms, that "investors are guaranteed to be paid out" upon the investment's First maturity Date. *Ex. B at 3.* Bitra has made several demands for payment pursuant to the terms of Bitra's Second Agreement after the arrival of Bitra's Second Maturity Date, but to date Defendants have failed to remit payment in violation of Bitra's Second Agreement's terms.

20.     On or about October 23, 2023 Bitra and Gandhi executed a third written Financing Agreement ("Bitra's Third Agreement") wherein NVSTORS was to repay Bitra a principal in the amount of two-hundred thousand dollars ($200,000.00), in addition to all accrued interest at the rate of thirty (30) percent fixed for a period of six (6) months, upon the investment's maturity date of April 24, 2024 ("Madhu's Third Maturity Date"). *See* Exhibit C, a true and correct copy of Bitra's Third Agreement.

21.     Upon information and belief, at the time of the execution of Bitra's Third Agreement, Nguyen was a business partner of Gandhi's and engaged in joint management of NVSTORS' business operations. Nguyen is also a signatory to Bitra's Third Agreement. *Ex. C at 4.*

22.     Defendants represented to Bitra pursuant to Madhu's Third Agreement's terms, that "investors are guaranteed to be paid out" upon the investment's First maturity Date. *Ex. C at 3.* Bitra has made several demands for payment pursuant to the terms of Madhu's Third Agreement after the arrival of Bitra's Third Maturity Date, but to date Defendants have failed to remit payment in violation of Bitra's Third Agreement's terms.

### iii. Investment Agreements Between Gundu and Defendants

23.     On or about January 17, 2023 Gundu and Gandhi executed a written Financing Agreement ("Gundu's First Agreement") wherein NVSTORS was to repay Gundu a principal in the amount of one-hundred and thirty thousand dollars ($130,000.00), in addition to all accrued

Unofficial Copy Office of Marilyn Burgess District Clerk

5

interest at the rate of thirty-six (36) percent fixed for a period of twelve (12) months, upon the investment's maturity date of July 6, 2023 ("Gundu's First Maturity Date"). *See* Exhibit D, a true and correct copy of Gundu's First Agreement.

24.     Upon information and belief, at the time of the execution of Gundu's First Agreement, Nguyen was a business partner of Gandhi's and engaged in joint management of NVSTORS' business operations.

25.     Defendants represented to Gundu pursuant to Gundu's First Agreement's terms, that "investors are guaranteed to be paid out" upon the investment's First maturity Date. *Ex. D at 3.* Gundu has made several demands for payment pursuant to the terms of Gundu's First Agreement after the arrival of Gundu's First Maturity Date, but to date Defendants have failed to remit payment in violation of Gundu's First Agreement's terms.

26.     On or about October 23, 2023 Gundu and Gandhi executed a second written Financing Agreement ("Gundu's Second Agreement") wherein NVSTORS was to repay Gundu a principal in the amount of two-hundred thousand dollars ($200,000.00), in addition to all accrued interest at the rate of thirty (30) percent fixed for a period of six (6) months, upon the investment's maturity date of April 24, 2024 ("Gundu's First Maturity Date"). *See* Exhibit E, a true and correct copy of Gundu's Second Agreement.

27.     Upon information and belief, at the time of the execution of Gundu's Second Agreement, Nguyen was a business partner of Gandhi's and engaged in joint management of NVSTORS' business operations. Nguyen is also a signatory to Madhu's First Agreement. *Ex. E at 4.*

28.     Defendants represented to Gundu pursuant to Gundu's Second Agreement's terms, that "investors are guaranteed to be paid out" upon the investment's First maturity Date. *Ex. E at*

6

*3.* Gundu has made several demands for payment pursuant to the terms of Gundu's Second Agreement after the arrival of Gundu's Second Maturity Date, but to date Defendants have failed to remit payment in violation of Gundu's Second Agreement's terms.

### iii. Ashok, Nguyen, and Natasha Directly Benefited from Fraudulently Transferred Investment Monies to by Gandhi and NVSTORS

29.      Upon information and belief, NVSTORS and Gandhi conveyed or transferred ownership and/or control of its assets to Nguyen, Ashok, and Natasha after the Intervenors entered into their Financing Agreements.[2] Upon information and belief, NVSTORS and Gandhi also conveyed or transferred ownership and/or control of its assets to Nguyen, Ashok, and Natasha ahead of Gandhi's voluntary bankruptcy filing. Defendants made these transfers to delay, hinder, and defraud its creditors by transferring its assets before or within a reasonable time after their claims arose in order to avoid repayment.

30.      Upon information and belief, Nguyen, Ashok, and Natasha directly benefit from these fraudulent conveyances and/or transfers which directly and/or indirectly harmed Intervenors.

## VI. CAUSES OF ACTION

## BREACH OF CONTRACT

31.      Intervenors incorporates paragraphs 1 through 30 herein by reference.

32.      The Financing Agreements are valid contracts between the Intervenors, Gandhi, and NVSTORS, and Intervenors performed its obligations thereunder. Gandhi, Nguyen, and NVSTORS have breached valid contracts by failing to meet their obligations under the Financing Agreements.

33.      A cause of action for a breach of contract requires proof of the following elements:

---

[2] Bitra's First Agreement, Bitra's Second Agreement, Bitra's Third Agreement, Gundu's First Agreement, and Gundu's Second Agreement are referred to collectively as "the Financing Agreements."

(1) The existence of a contract; (2) performance or tendered performance by Plaintiff; (3) Breach of the Contract by Defendant; and (4) damages to the Plaintiff(s) resulting from that breach. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W. 3d 741, 758 (Tex. App.-El Paso 2000, no pet.).

34.     Intervenors, NVSTORS, Nguyen, and Gandhi had five (5) valid and enforceable contracts through the Financing Agreements. Intervenors tendered their respective investment monies as outlined above in satisfaction of the Financing Agreements. Defendants have breached the contracts by failing to remit repayment of the Investment Monies, plus interest, to Intervenors upon the arrival of the respective Maturity Dates. As a result of said breach, Intervenors have suffered monetary loss.

35.     Defendants' breaches of the Financing Agreements by failing to pay the principal and interest due under the agreements have been the cause of actual damages to Intervenors in excess of the minimum jurisdictional limits of this Court.

## COMMON-LAW FRAUD: FRAUDULENT MISREPRESENTATION & FRAUDULENT INDUCEMENT

36.     Intervenors incorporate paragraphs 1 through 35 herein by reference.

37.     In addition to and/or in the alternative to any other cause of action, Intervenors seek to recover damages against Defendants NVSTORS, Nguyen, and Gandhi for common-law fraud, fraudulent misrepresentation, and fraudulent inducement.

38.     "A common law fraud claim is established by showing proof of the following elements: a material misrepresentation that was false, was known to be false when made or was made recklessly as a positive assertion without knowledge of its truth, that was intended to be acted upon, that was relied upon, and which caused injury." *Trinity Indus. v. Ashland, Inc.*, 53 S.W.3d 852, 867 (Tex. App.—Austin 2001). Similarly, in order to prevail on its fraud inducement cause of action, Plaintiff must provide proof of the following elements: (1) a party has concealed

8

or failed to disclose a material fact within their knowledge, (2) the party knew that the other party was ignorant of the fact and did not have an equal opportunity to discover the truth, (3) the party intended to induce the other party to take some action by concealing or failing to disclose the fact, and (4) the other party suffered injury as a result of acting without knowledge of the undisclosed fact. *UMLIC VP LLC v. T&M Sales & Envtl. Sys.*, 176 S.W.3d 595, 602 (Tex. App.—Corpus Christi 2005, pet. denied).

39.     Defendants represented to Intervenors that investors were guaranteed to be paid out upon the maturity dates of the Financing Agreements. Upon information and belief, and unknown to Intervenors at the time of the execution of the Agreements, Defendants suffered from failed business operations and/or business mismanagement that resulted in the financial decline of NVSTORS. Defendants knowingly concealed this material fact and induced Intervenors to enter into the Financing Agreements by concealing this material fact. Intervenors relied on Defendants' misrepresentations concerning the state of their business operations and entered into the Financing Agreements. As a result of Defendants' misrepresentations, Intervenors have suffered financial injury and harm.

## NEGLIGENT MISREPRESENTATION

40.     Intervenors incorporate paragraphs 1 through 39 herein by reference.

41.     In addition to and/or in the alternative to any other cause of action, Intervenors seek to recover damages against Defendants NVSTORS, Nguyen, and Gandhi for negligent misrepresentation.

42.     The elements of negligent misrepresentation are: "(1) a representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the

9

information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Zaan, LLC v. Sangani*, No. 05–12–00423–CV, 2015 WL 2398652, at \*6 (Tex. App. May 20, 2015) (citing *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1999)).

43.      Defendants represented to Intervenors that investors were guaranteed to be paid out upon the maturity dates of the Financing Agreements. Upon information and belief, and unknown to Intervenors at the time of the execution of the Financing Agreements, Defendants suffered from financial losses which would hinder the successful payment to Intervenors of the Investment Monies pursuant to the Financing Agreements. Intervenors relied on Defendants' representations and false information concerning the state of their business operations when they entered into the Financing Agreements. As a result of Defendants' misrepresentations and failure to exercise reasonable care in entering into the financial agreements with Intervenors, Intervenors have suffered financial injury and harm.

## CONSPIRACY

44.      Intervenors incorporate paragraphs 1 through 43 herein by reference.

45.      In addition to and/or in the alternative to any other cause of action, Intervenors seek to recover damages against the Defendants for civil conspiracy.

46.      "The required elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Henkel v. Emjo Invs., Ltd.,* 480 S.W.3d 1, 7 (Tex. App. 2015) (internal citations omitted).

47.      Upon information and belief, Gandhi and Nguyen were members of a combination of two or more persons whose object and intent was to accomplish an unlawful purpose by

10

unlawful means. Specifically, Defendants intended to obtain certain financial investments from unsuspecting investors, like Intervenors, without properly ensuring the lawful repayment of such investments pursuant to the Financing Agreements. Furthermore, Defendants engaged in the unlawful transfer of properties and financial assets between one another, Natasha, and Ashok in order to prevent Intervenors and other creditors from collecting payment of the unpaid financial investments. Therefore, Intervenors seek to hold all of the Defendants jointly and severally liable for the causes of action and damages outlined herein.

**ALTER EGO**

48. Intervenors incorporate paragraphs 1 through 47 herein by reference.

49. In addition to and/or in the alternative to any other cause of action, Intervenors seek to recover damages against the Defendants for alter ego.

50. "Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *U.S. KingKing, LLC v. Precision Energy Servs., Inc.,* 555 S.W.3d 200, 213 (Tex. App. 2018) (internal citations omitted). "Thus, to pierce the corporate veil and impose liability under an alter-ego theory, the plaintiff must demonstrate (1) that the entity on which it seeks to impose liability is the alter ego of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose, that is, to perpetrate an actual fraud on the plaintiff for the defendant's direct personal benefit." *Id.* (internal citations omitted).

51. NVSTORS, Nguyen, and Gandhi are alter egos of one another. Gandhi and Nguyen utilized NVSTORS as part of a fraudulent scheme to defraud and to induce unsuspecting investors, like Intervenors, to entrust Defendants with Investment Monies—monies that Gandhi, Nguyen, Natasha, and Ashok directly profited from to Intervenors' detriment. Furthermore, upon

11

information and belief, NVSTORS corporate and financial assets, profits, and/or properties were unlawfully transferred to Nguyen, Natasha, Ashok, and/or Gandhi to further perpetuate fraud upon Intervenors and hinder any attempts by creditors and investors to collect on the debt(s) owed by Defendants. In addition, material misrepresentations or concealment of material facts were made as to their bad acts. Further fraudulent actions occurred, as described throughout the Petition and are fully incorporated into this Paragraph. Thus, Nguyen, Natasha, Ashok, and/or Gandhi should be held jointly and severally liable to Intervenors on the grounds that the corporate entity of NVSTORS was used to facilitate and perpetuate the aforementioned fraudulent causes of action against Intervenors for the personal benefit of Nguyen, Natasha, Ashok, and/or Gandhi

## UNJUST ENRICHMENT

52.    Intervenors incorporate paragraphs 1 through 51 herein by reference.

53.    The Defendants hold money that belongs to Intervenors. The Intervenors Investment Monies were not returned pursuant to the Financing Agreements. Therefore, they have been unjustly enriched. Likewise, Defendants hold money which rightfully belongs to the Intervenors and their retention of the money is wrongful. Intervenors should recover these funds. Such recovery would prevent an unconscionable loss and would prevent the unjust enrichment of Defendants. Intervenors have incurred actual damages as a result.

## VIOLATIONS OF THE TEXAS UNIFORM FRAUDULENT TRANSFER ACT

54.    Intervenors incorporate paragraphs 1 through 53 herein by reference.

55.    Upon information and belief, NVSTORS conveyed or transferred ownership and/or control of its assets to Nguyen, Natasha, Ashok, and/or Gandhi. Defendants made these transfers to delay, hinder, and defraud its creditors by transferring its assets before or within a reasonable time after their claims arose. Therefore, NVSTORS and its transferees have violated the Texas

12

Uniform Fraudulent Transfer Act ("UFTA"). *See* Chapter 24 of the TEX. BUS. COMM. CODE.

## VII. CONDITIONS PRECEDENT

52.     Intervenors fully incorporate the preceding paragraphs as if stated herein.

53.     All conditions precedent to Intervenors' claims for relief have been performed or have occurred.

## VIII. REQUEST FOR DISCLOSURE

54.     Intervenors request disclosure, within 50 days of service of this petition, of all information and materials required under Texas Rules of Civil Procedure 194.2.

## IX. JURY DEMAND

55.     Intervenors hereby file with the Clerk of the Court their written request for a jury trial on all triable issues and tender the required jury fee.

## X.  ATTORNEY'S FEES

56.     Intervenors seek to recover her reasonable and necessary attorney's fees and court costs pursuant to Section 38.001 of the Texas Civil Practices and Remedies Code and under the §24.013 of the Uniform Fraudulent Transfer Act.

## XI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Intervenors respectfully requests that the Court issue citation for Defendants to appear and answer, and that Intervenors be awarded a judgment against the Defendants for the following:

a.   Actual damages;

b.   Economic damages;

c.   Exemplary damages;

d.   Pre-judgment and post-judgment interest;

e.   Reasonable and necessary attorney fees;

f.   Conditional appellate fees;

g.   Court costs; and

h.   all further relief to which they may be justly entitled.

Respectfully submitted,

**SHACKELFORD, MCKINLEY & NORTON, LLP**

By: */s/ Lori A. Hood*
    Lori A. Hood
    Texas Bar No. 09943430
    lhood@shackelford.law
    Shifa A. Abuzaid
    Texas Bar No. 24133252
    sabuzaid@shackelford.law
    717 Texas Ave, 27th Floor
    Houston, Texas 77002
    Tel: 832-415-1801
    Fax: 832-415-1095

**ATTORNEYS FOR PLAINTIFF AND INTERVENORS**

## Certificate of Service

I certify that a true copy of this document was served in accordance with the Texas Rules of Civil Procedure via e-mail and/or electronic filing system on August 20, 2025.

*/s/ Lori A. Hood*

14

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Christina Polk on behalf of Lori Hood
Bar No. 9943430
cpolk@shackelford.law
Envelope ID: 104603198
Filing Code Description: Amended Filing
Filing Description: SECOND AMENDED VERIFIED ORIGINAL PETITION IN INTERVENTION
Status as of 8/20/2025 10:56 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher M.Portner | | cportner@portnerbond.com | 8/20/2025 10:19:28 AM | SENT |
| Robert Veliz | | rveliz@shackelford.law | 8/20/2025 10:19:28 AM | SENT |
| R. KyleHawes | | kyle.hawes@chamberlainlaw.com | 8/20/2025 10:19:28 AM | SENT |
| Cris Feldman | | cris.feldman@feldman.law | 8/20/2025 10:19:28 AM | SENT |
| Cassandra Hoff | | cassandra.hoff@feldman.law | 8/20/2025 10:19:28 AM | SENT |
| Hannah LaCour | | hannah.lacour@feldman.law | 8/20/2025 10:19:28 AM | SENT |
| Shannon Almes | | shannon.almes@feldman.law | 8/20/2025 10:19:28 AM | SENT |
| Shifa Abuzaid | | sabuzaid@shackelford.law | 8/20/2025 10:19:28 AM | SENT |
| Rosa Reyes | | rosa.reyes@chamberlainlaw.com | 8/20/2025 10:19:28 AM | SENT |
| Marcellous McZeal | | mmczeal@grealishmczeal.com | 8/20/2025 10:19:28 AM | SENT |
| Christina Polk | | cpolk@shackelford.law | 8/20/2025 10:19:28 AM | SENT |
| Lori AHood | | lhood@shackelford.law | 8/20/2025 10:19:28 AM | SENT |

Unofficial Copy Office of Marilyn Burgess District Clerk